23        88
35 SC    326
35 SC    328
36 SC    622

## Evans *versus* See.

1. On a sale of a house and lot in 1835 which was subject to ground-rent, there was left in the hands of the vendees a portion of the purchase-money to be applied to the payment of arrears of ground-rent, the vendees agreeing to pay them. Above sixteen years afterwards the vendor was sued for the said arrears, and he paid them before the return of the writ, and within a year afterwards brought suit for the same against the vendees: *Held*, that he was entitled to recover.

2. In the suit by the vendor, which was brought in 1852, there could not be a recovery against the plea of the statute of limitations under a special count in which it was alleged that at the sale of the house and lot in 1835 the sum claimed was due by the defendants as purchasers, who then promised to pay it to the plaintiff when requested. The statute was a bar to a claim under such count.

3. The statute, however, did not apply to the common counts, because until the ground-rent was extinguished the plaintiff had no claim against the vendees, and the statute began to operate only from the time of payment, which was within one year before the institution of the suit.

4. It was not a material consideration whether the vendor would have been legally bound to pay the arrears of rent. The payment of the arrears, properly made by him, released the fund which was retained by the vendees, and the vendor was then entitled to recover it.

5. The rejection of evidence which does no injury to the party who offered it is no ground for reversal.

Error to the District Court, *Philadelphia*.

This was an action on the case, by R. T. Evans *v.* R. C. See and C. Remington, brought on 10th September, 1852. The writ was served on See only. It was brought to recover $380.83, portion of the purchase-money of a house and lot on Market street, Philadelphia, sold by Evans to them on the 17th October, 1835. The lot was subject to a ground-rent of $30 per annum. The rent was paid till 1820, but was in arrear from 1820 till 1835. The arrears till 1835, were stated at $450; taxes were deducted, and the balance was $380.83, which amount, by a paper of October 17th, 1835, signed by the three parties, it was stated, was left in the hands of See and Remington, "who assume the payment thereof." In the declaration was contained several of the common counts in actions of *assumpsit*, including one for money had and received,

and also a special count. In the latter, it was alleged that on the 17th October, 1835, there was left in the hands of the defendants, out of the purchase-money of the property, ground-rent in arrear to the amount of $380.83, the defendants assuming "the payment thereof;" of which amount the defendants then agreed to make payment to the plaintiff when requested; and it was alleged that the plaintiff had been legally called on and required to pay; and actually paid to the administrator of the estate of N. Waln, the owner of the ground-rent, the said amount, on the 1st day of January, 1852. The pleas were *non assumpsit*, and *actio non accrevit infra sex annos.* ·

On the 18th December, 1851, a suit was brought against the present plaintiff, by the administrator of the estate of Nicholas Waln, deceased, whose claim to the arrears appeared from the chain of title given in evidence; and Evans, on 23d December, 1851, paid the arrears to the counsel of the administrator. The defendants refusing to repay the plaintiff, this suit was afterwards brought to recover the money credited on the purchase, on the 17th October, 1835, for the payment of the arrears of ground-rent. In the deed of Evans to the defendants, such arrears were stated to be due.

On part of the plaintiff was offered an account, stating indebtedness, by R. C. See to Edward Waln, for 17 years' ground-rent, accruing *after* the conveyance, by Evans, viz., from Jan. 1, 1835, to Jan. 1, 1852, at $30 per annum, and a statement of taxes on this property, from 1835 till 1851 inclusive; in all amounting to $405.22. To this paper, was an acknowledgment signed by See, that the said *taxes* had been allowed to him in the payment of the ground-rent, and agreeing to indemnify Waln against any claims for the said taxes.

This paper was objected to on the ground that it was not between the same persons as were parties to this action, and it was overruled.

No evidence was offered on the part of the defendant.

STROUD, J., charged, *inter alia*, that it is alleged, in the special count, that the defendants, under the agreement of October 17th, 1835, promised to pay. If this is the import of the paper, it results that the money was due on that day, and if so, the statute of limitations was a bar.

As to the claim under the common counts, he charged, *inter alia*, that if Evans was liable to Waln, it was by virtue of privity of *estate ;* and, in this respect, would be liable for the time of his possession, which it was incumbent on him to show. That, in the deed of Evans to See and Remington, his title was stated as derived from his mother, but he observed that the time of her death was not shown. He directed the jury to find *for the defendants.*

Error was assigned to the rejection of the paper of 25th Feb-

[Evans *v.* See.]

ruary, 1852, signed by See. 4. In charging that the plaintiff could not recover, because he had not given evidence of the time he occupied the estate, whereas he should have charged that if there was any evidence that the arrears had been paid to the *proper party*, the plaintiff was entitled to recover the sum retained by the defendants, to indemnify them against such arrears. 5. In not submitting to the jury the question whether or not the ground-rent, from 1820 to 1835, had been paid by the plaintiff.

*Porter*, for plaintiff in error.—The paper of 25th February, 1852, rejected, was evidence. See, who signed it, was the only defendant in this case, the other party sued not having been served. It was evidence to show that See had settled with Waln for a portion of the ground-rent, viz., for arrears accruing subsequent to the sale by Evans, and had therein, to some extent, recognised Waln as the rightful claimant of the rent. It was also evidence to show that the *former* arrears had been paid, as such would be the legal implication from it.

As to the charge. It was not material whether Evans was legally liable for the rent or not. It was sufficient for him to show that he had left the sum claimed in the hands of the defendant, and that the rent, as an indemnity against which it had been left, had been paid.

But the deed of Evans to the defendants produced on their part and given in evidence by the plaintiff, showed that the latter had been the legal owner of the estate from the death of his mother till the conveyance by the plaintiff. He was thus liable for the rent during that time, and the extent of that time should have been submitted to the jury.

The plaintiff did not sue to recover money paid by him under an alleged legal liability, but to recover the amount of money left with them for their protection, and the possibility of a loss was removed by the payment to Waln. Such payment was made on 23d December, 1851, and the statute did not begin to run till then. It did not begin to operate till he was legally entitled to sue: 14 *Ser. & R.* 328; 1 *Pa. Rep.* 492; 1 *Blacks. Rep.* 353; 1 *H. Blacks.* 631; 1 *Camp.* 539; 1 *Har. & Gill* 471.

*Horn*, with whom was *Kennedy*, contrà.—On the 18th of December, 1851, an action of covenant was brought by Edward Waln, administrator of Nicholas Waln, deceased, who survived Jacob S. Waln and William Waln, trustees, &c., against Robert J. Evans, the plaintiff in error; claiming arrears of a ground-rent of $30 per annum, reserved in a deed from Jacob Shoemaker to Robert Towers, in 1770, out of a property claimed to be the same which the said plaintiff conveyed to R. Calhoun See, and Clement Remington, the defendants, on the 17th October, 1835; and which

[Evans *v.* See.]

ground-rent was alleged to be due from 1820 to 1835. It was alleged that the right of *Waln* to sue for such arrears was not admitted on part of defendant—and that no notice was given to the defendants of the suit by Waln *v.* Evans. The agreement referred to in the special count being dated in October, 1835, it was contended that a promise arising under it was barred.

It was said that in order to recover under the common counts, *dating the promise on the* 23*d December,* 1851, the plaintiff should show a request on part of defendants to pay the amount paid, or a liability which in law would amount to such; and not being the covenantor in the ground-rent deed, he could be liable only on account of *privity of estate :* 2 *Harris* 110. His deed recites that the premises subject to ground-rent were granted by Robert Towers to his daughter Elizabeth, and that the latter died intestate, and on her death the estate descended to R. J. Evans, the plaintiff, as her heir—but when she died did not appear. The plaintiff could not by a voluntary payment render the defendants liable : 8 *Term Rep.* 613 ; *Step. N. P.* 317.

The ground-rent from 1820 till 1831, as twenty years had elapsed, was presumed to be paid : 2 *Watts* 214.

The settlement rejected was a settlement by See individually, Remington having conveyed to him. It had no connexion with the present claim : 5 *Barr* 274.

The opinion of the Court was delivered by

WOODWARD, J.—One man sells a house and lot to another, and leaves $380.83 of the price in the hands of the purchaser, to meet an outstanding lien of that amount. More than six years afterwards, the vendor, being sued for it, pays off the lien, and within a year thereafter brings an action of assumpsit against his vendee to recover the sum left in his hands, now no longer needed to be retained, the lien against which it was indemnity having been extinguished. It would seem to be a clear dictate of natural justice that such a plaintiff should be permitted to recover; but in this case he was not, and we are now to look into the reasons assigned for denying him a verdict.

The special count of the plaintiff's declaration was founded on the memorandum of agreement made and signed by the parties on the 17th October, 1835, the date of the sale, and more than six years before suit brought.

The plaintiff having set forth the agreement, declared that it bound the defendants to make payment of the said sum to *him* when thereunto requested. This was evidently a cause of action as of that date, and the defendants having pleaded the Statute of Limitations, we think the Court were right in ruling that the plaintiff could not recover on his special count.

But the statute would not apply to the common counts, because,

until the lien was extinguished, the plaintiff had no right of action on them. The statute bars the *action*, and does not begin to run until the right of action accrues.

The paper of the 17th October, 1835, whether construed to be an undertaking to the plaintiff or not, evidently took away from him the right to sue for the balance of his purchase-money, until the unpaid ground-rent should be provided for. Whilst that remained outstanding, there was the same reason for See and Remington retaining the $380.83, that there was for leaving it with them on the 17th October, 1835, and therefore Evans could not sue for it; and because he could not sue for it, the statute did not begin to run against him. But as soon as the ground-rent was paid, this sum of money was loosed, and became demandable by action, and then the statute began to run. Within less than a year, however, after this, the action was brought, so that as to the common counts of the plaintiff's *narr.* the statute was no bar.

And such appears to have been the opinion of the learned judge of the District Court, for he rested his objection to the plaintiff's recovery on these counts, not on the statute, but on his failure to show that he was under legal necessity to pay the ground-rent to Mr. Waln. "Has it been shown," the Court asked, "that Waln was entitled to recover the ground-rent from Evans?" The judge answered this question in the negative, and so ruled the case against the plaintiff. The question was founded on the assumption that Waln was the party entitled to receive the ground-rent, for had there been any doubt on this point, it would have been submitted to the jury.

Assuming, then, that the payment was made *to* the proper party, is it of any consequence in the present case that it was made *by* a party not compellable to make it? The question here is, whether the payment of the ground-rent did not release the fund pledged as indemnity against it. We think it did. The payment of the 23d December, 1851, extinguished the ground-rent, and the lien of it was gone for ever. The owner of it, being satisfied, could never assert it against the premises sold by Evans to the defendants. If Waln had forgiven it, cancelled it without consideration, or if it had been paid off by a mere stranger, it could not longer encumber the premises or be set up against the plaintiff's action. But Evans was not a mere stranger or volunteer. If not strictly liable for the ground-rent, he had such an interest in its extinguishment as entitled him to pay it. He was sued for it, and its removal was indispensable to the closing of his contract of sale. Instead of resisting Waln's right to recover from him, he chose to remove the only obstacle in the way of his recovering the balance of his purchase-money from this defendant, and he had a right to do so. The payment was well made by him, made to the proper party, and could not be disaffirmed or recovered back by him, nor

impeached by others. From that moment the money in the defendants' hands belonged, ex æquo et bono, to the plaintiff, and the action, as to the common counts, was brought in good time for its recovery.

The grounds of objection to the evidence contained in the bill of exceptions were inadequate for its exclusion, but the plaintiff was not injured by the rejection of it, because it tended only to prove that Mr. Waln was the proper party to receive the ground-rent, and this the Court assumed. Herein, therefore, is no cause for a reversal; but for the misdirection the judgment is reversed, and a *venire de novo* awarded.